UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

JEFFERY N.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

6:19-cv-1681-JR

OPINION AND ORDER

Russo, Magistrate Judge:

Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff asserts disability beginning August 24, 2015, due to heart problems (3-5 heart attacks, bypass surgery), depression, fatigue, nausea, shoulder/back problems. Tr. 196, 224. After a hearing held on August 27, 2018, an Administrative Law Judge (ALJ) determined plaintiff was

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

not disabled. Tr. 36, 15-24. Plaintiff contends the ALJ erred by: (1) rejecting plaintiff's symptom testimony; and (2) failing to identify a significant number of jobs which did not conflict with plaintiff's residual functional capacity (RFC).

A.     Plaintiff's Testimony

In January 2000, plaintiff underwent quadruple coronary bypass surgery. Tr. 393. Plaintiff recovered nicely including far less fatigue. Tr. 393-94.

At the hearing, plaintiff testified he held a general maintenance job for 20 years which ended in about 2008 because his new supervisor was less tolerant of his missing work and replaced him with her son. Tr. 43-44.

Plaintiff also testified he is unable to work due to nausea every morning. Tr. 44-45. Plaintiff asserts he has extreme fatigue, problems with any amount of exertion and that even sitting causes back pain. Tr. 45-47. Plaintiff also testified that he is battling depression. Tr. 48-49.

The ALJ rejected plaintiff's testimony to the extent it suggested an inability to work. The ALJ cited the very limited treatment sought by plaintiff, failure to take medications for months at a time, and an ability to care for himself and do some chores. Tr. 20-21.[2]

Plaintiff's testimony and function report regarding his daily activities do not appear to suggest abilities greater than his stated limitations. See Tr. 47-48 (spends most of the day lying down); Tr. 232 (very tired all the time, weak with no stamina when he tries to push too hard); Tr. 233-35 (gets up at 9:00 am and returns to bed until sometime between 1:00 and 3:00 pm, watches TV, cleans room or does dishes and laundry as needed, eats quick simple meals, feeds cat, watches more T.V. and then goes to bed, occasionally does house repairs slowly with a lots of rest, mows

---

[2] The ALJ also noted that plaintiff worked after his symptoms of nausea started. Tr. 20. See Tr. 376 (February 2006 chart note indicates chronic morning nausea has been bothering plaintiff for years but doesn't trouble him during the day). However, plaintiff testified that his previous supervisor let him come in at noon because of his trouble with nausea in the morning. Tr. 44.

Page 2 – OPINION AND ORDER

the lawn occasionally using a riding mower, shops weekly for 1 or 2 hours).  The ALJ erred in finding plaintiff's daily activities contradict his disabling symptom testimony.  See Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day).

Lack of treatment and failure to follow a prescribed course of treatment are clear and convincing reasons for rejecting symptom testimony.  See Fair v. Bowen, 885 F.2d 597, 603–04 (9th Cir. 1989) (unexplained, or inadequately explained failure to seek treatment and failure to follow a prescribed course of treatment can constitute clear and convincing reasons for discounting a claimant's credibility regarding his or her symptoms).  The record supports the ALJ's conclusion that plaintiff rarely sought treatment for his symptoms and that he fails to take medications.  However, the record suggests plaintiff may have limited resources to seek medical treatment.  See Tr. 48 (no money and can't afford to do anything); Tr. 236 (no money to pay bills, never had enough money for a savings account); Tr. 453 (to have housing and avoid homelessness, plaintiff puts up with people he has trouble living with).  The ALJ must consider the reasons for failing to seek or follow treatment:

> We will not find an individual's symptoms inconsistent with the evidence in the record on [the basis of lack of treatment of failure to follow prescribed treatment] without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

Soc. Sec. Ruling 16-3p, 2017 WL 5180304.

The ALJ has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983). Ambiguous evidence or findings that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry. Armstrong v. Commissioner of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir.1998). It is not clear from the record whether there is a good faith reason why plaintiff failed to seek treatment or follow prescribed treatment consistent with his complaints of disabling symptoms.

The ALJ also noted that when plaintiff did seek treatment, the treatment notes do not support back pain from sitting or often fail to mention plaintiff's symptoms. Tr. 21. Again, it is unclear why plaintiff did not seek treatment for these issues and whether there was a financial impediment to raising the issues with doctors. Accordingly, the ALJ also erred in failing to develop the record regarding possible reasons why plaintiff failed to seek treatment or take medications.

B.     Other Work Existing in Significant Numbers in the National Economy

The ALJ found plaintiff capable of performing other work in the national economy based on the testimony of a vocational expert. Plaintiff asserts one of the three jobs identified by the vocational expert, floor waxer, has documented requirements that conflict with plaintiff's RFC as identified by the ALJ. The Commissioner agrees that the vocational expert failed to adequately address this apparent conflict.

Plaintiff argues a second identified job, cleaner/housekeeper, cannot be considered because it is light duty and if plaintiff is limited to light work, the medical vocational guidelines would require a finding of disability given plaintiff's age and education. However, the ALJ did not limit plaintiff to light work and thus the guideline cited by plaintiff is not relevant. This is true regardless

of the exertion level of the job identified so long as the ALJ relies on the vocational expert to find that a person of plaintiff's RFC and age can obtain and perform the job. Plaintiff argues the third job, laundry worker, exists in insufficient numbers by itself to demonstrate other work available to plaintiff. However, as noted, the ALJ identified two jobs other jobs. Nonetheless, because the ALJ's determination of the RFC is based in part on his rejection of plaintiff's symptom testimony, this issue of what jobs plaintiff can perform should be reevaluated along with the RFC determination.

C.     Remand

Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014). Here, the record is uncertain as to plaintiff's RFC given the ambiguities regarding plaintiff's failure to seek treatment and take prescribed medications. Accordingly, a remand is necessary to address this deficiency and the question of whether plaintiff can perform work existing in significant numbers in the national economy.

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and remanded for further proceedings.

DATED this 26th day of October, 2020.

    /s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge